UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-24690-CIV-ALTONAGA/O'Sullivan

**ESTHER CASTRO**,

    Plaintiff,
v.

**KENTUCKY HIGHER
EDUCATION STUDENT
LOAN CORPORATION**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Kentucky Higher Education Student Loan Corporation's ("Defendant['s]" or "KHESLC['s]") Motion to Dismiss . . . ("Motion") [ECF No. 12], filed December 20, 2016. Plaintiff, Esther Castro ("Plaintiff") filed a Response . . . ("Response") [ECF No. 21], to which Defendant filed a Reply . . . ("Reply") [ECF No. 26]. The Court has carefully considered the parties' written submissions, the record, and applicable law.

### I. BACKGROUND

Plaintiff alleges Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. sections 227 *et seq.*, and the Florida Consumer Collection Practices Act ("FCCPA"), Florida Statute sections 559.55 *et seq.*, by knowingly calling Plaintiff's cellphone to collect a debt, all the while using an automatic telephone dialing system after Plaintiff notified Defendant not to contact her by phone. (*See* Complaint [ECF No. 1] ¶¶ 17, 30–32, 35–36). Defendant, a student loan servicing company created by Kentucky's General Assembly, seeks to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1), arguing Defendant is an arm of the

state of Kentucky and is thus immune from suit under the Eleventh Amendment of the United States Constitution. (*See generally* Mot.). It also argues it is entitled to sovereign immunity under Kentucky law. (*See id.*).

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

Dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may be premised on a facial or factual attack. *See Stalley* ex rel. *United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). A facial attack challenges the sufficiency of the complaint's allegations. *See id.* In contrast, a factual attack questions "the existence of subject matter jurisdiction in fact." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation omitted). Defendant's assertion of sovereign immunity constitutes a factual attack. (*See* Mot. 2–3).

Because a factual attack challenges a court's "power to hear the case," a court "is free to weigh the evidence and satisfy itself as to the existence of [subject matter jurisdiction] . . . . [T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue." *Lawrence*, 919 F.2d at 1529 (alterations added) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). In evaluating a jurisdictional challenge, the court may consider "matters outside the pleadings, such as testimony and affidavits." *Id.* (citation omitted).

### B. Sovereign Immunity

The Eleventh Amendment of the U.S. Constitution provides states with immunity from suit in federal court. *See Virginia Off. for Prot. and Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (The Eleventh Amendment guarantees that "absent waiver or valid abrogation, federal

courts may not entertain a private person's suit against a State"); *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 779 (1991) ("[T]he States entered the federal system with their sovereignty intact." (alteration added)). This immunity "is available 'only' to states and arms of the states," *Walker v. Jefferson Cty. Bd. of Educ.*, 771 F.3d 748, 751 (11th Cir. 2014), that are "public entities acting as state agents or instrumentalities," *Miller v. Advantage Behavioral Health Sys.*, No. 15-15496, 2017 WL 370850, at *1 (11th Cir. Jan. 26, 2017) ("*Miller II*"). The immunity does not extend to "counties, municipal corporations, or similar political subdivisions of the state." *Lightfoot v. Henry Cty. Sch. Dist.*, 771 F.3d 764, 768 (11th Cir. 2014).

The Eleventh Circuit has promulgated a four-factor test to determine whether an entity is an "arm of the state." *See Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003). Courts consider: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* (citation omitted). Although "the issue of whether an entity is an 'arm of the State' for Eleventh Amendment purposes is ultimately a question of federal law," *id.*, "resolution of these factors depends, in part, on state law," *Lightfoot*, 771 F.3d at 768. That is, courts must evaluate how state statutes characterize the entity. *See id.*; *see also Manders*, 338 F.3d at 1309 (analyzing how state law treats the entity claiming sovereign immunity). And in determining an entity's status, courts cannot assess the entity in "the abstract," but instead should make the "assess[ment] in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Miller II*, 2017 WL 370850, at *2 (alteration added) (quoting *Manders*, 338 F.3d at 1308); *see also Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1311 (11th Cir. 2000).

An entity is "immune from suits" for damages to the extent it does not "elect to waive that defense." *Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012) (citations omitted). One way a state may waive sovereign immunity is "by consenting to suit." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999) (citation omitted). It may also waive immunity "through its conduct in litigation," *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005); for example, by voluntarily becoming a party to a cause and submitting "its rights for judicial determination," *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002) (internal quotation marks and citation omitted). Waiver may be found by an entity's conduct in litigation because of the need for judicial consistency and fairness; otherwise, an entity's "actual preference or desire" may "favor selective use of 'immunity' to achieve litigation advantages." *Id.* at 620.

The burden of demonstrating it "qualifie[s] as an arm of the state entitled to share in its immunity" is on the "entity invoking Eleventh Amendment immunity." *Miller v. Advantage Behavioral Health Sys.*, 146 F. Supp. 3d 1318, 1322–23 (M.D. Ga. 2015) ("*Miller I*") (alteration in original; internal quotation marks and citations omitted), *aff'd*, *Miller II*.

### III.   ANALYSIS

Defendant moves to dismiss the Complaint, arguing it is entitled to sovereign immunity because: (1) Kentucky law defines Defendant as an arm of the state (*see* Mot. 8–12); (2) Kentucky maintains substantial control over Defendant (*see id.* 12–15); (3) Defendant could derive its funds from the state (*see id.* 15); and (4) Kentucky "could potentially be responsible for paying any judgment" entered against Defendant (*id.* 16). Defendant further asserts its functions "fall within the traditional purview of state government, not local government" (*id.* 18), and it is entitled to immunity under Kentucky law (*see id.* 19). Plaintiff disagrees with

4

Defendant's analysis, insisting Defendant is a "separate entity" from Kentucky not entitled to sovereign immunity. (Resp. 2).

### A.     Introduction

As a preliminary matter, the Court notes the most recent court to address in a published opinion whether Defendant is an "arm of the state" of Kentucky concluded the "KHESLC is not an arm of the state entitled to sovereign immunity." *Gaffney v. Ky. Higher Educ. Student Loan Corp.*, No. 3:15-CV-01441, 2016 WL 3688934, at *9 (M.D. Tenn. July 12, 2016). In *Gaffney*, Defendant moved to dismiss the complaint arguing, as it does here, it was entitled to sovereign immunity. *See id.* at *1–2. After the court denied Defendant's motion, Defendant did not file an interlocutory appeal of the order or thereafter move to dismiss the plaintiff's first amended complaint. (*See* First Amended Complaint [ECF No. 27] in *Gaffney v. Ky. Higher Educ. Student Loan Corp.*, No. 3:15-CV-01441-AAT (2015)[1]). Indeed, trial in *Gaffney* is set to commence October 17, 2017. (*See id.* Order Setting Case for Trial [ECF No. 26] 1).

Additionally, in *U.S.* ex rel. *Oberg v. Kentucky Higher Education Student Loan Corp.*, 681 F.3d 575 (4th Cir. 2012) ("*Oberg I*"), the plaintiff relator sued the KHELSC and other student loan corporations on behalf of the United States for violations of the False Claims Act. *See id.* at 577. The case was appealed twice from the U.S. District Court for the Eastern District of Virginia to the Fourth Circuit Court of Appeals after the district court granted the defendants' motions to dismiss. *See id.*; *see also U.S.* ex rel. *Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 134 (4th Cir. 2014) ("*Oberg III*"). Before *Oberg III*, on remand, the district court found the KHELSC and the other entities were "arm[s] of each of their respective states." (*U.S.*

---

[1] This citation refers to the docket in *Gaffney* available in the electronic case management system of the U.S. District Court for the Middle District of Tennessee, which can be found at https://ecf.tnmd.uscourts.gov/cgi-bin/login.pl.

ex rel. *Oberg v. Pa. Higher Educ. Assistance Agency*, No. 1:07-CV-00960 (Dec. 5, 2012), Memorandum Opinion [ECF No. 63] 21 ("*Oberg II*")[2] (alteration added)).  On appeal of the district court's decision, the Fourth Circuit noted the KHESLC had "reached a settlement with [the plaintiff] shortly before the most recent appeal." *Oberg III*, 745 F.3d at 135 n.1 (alteration added).  The Fourth Circuit ultimately remanded the case to permit limited discovery as to whether two of the remaining defendants were truly subject to sufficient state control to render them arms of the states and whether the states would be legally or functionally liable for judgments against the entities. *See id.* at 142.

Curiously then, while Defendant maintains it is an arm of the state of Kentucky in this case, it has not challenged the *Gaffney* court's contrary determination, which it could have done. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993) (announcing state entities may file an interlocutory appeal of a district court order denying a claim of Eleventh Amendment immunity, and noting "the value to the States of their Eleventh Amendment immunity . . . is for the most part lost as litigation proceeds past motion practice" (alteration added)); *see also Smith v. Leis*, 407 F. App'x 918, 926 n.6 (6th Cir. 2011).  Nor did the KHESLC maintain its stance it was an arm of the state in *Oberg III*, but instead settled the case while its Eleventh Amendment immunity defense was unresolved, *see* 745 F.3d at 135 n.1.

As the U.S. Supreme Court explained in *Lapides*, waiver of sovereign immunity may be found by a defendant's litigation conduct if the defendant has submitted itself to judicial determination in previous cases and thus waived its immunity; application of the Eleventh Amendment must be consistent. *See* 535 U.S. at 619.  To be clear, Defendant has not explicitly waived its immunity. *See Barnes v. Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012) ("The test to

---

[2] This citation refers to the docket in *Oberg* available in the electronic case management system of the U.S. District Court for the Eastern District of Virginia, which can be found at https://ecf.vaed.uscourts.gov/cgi-bin/DktRpt.pl?111469911716096-L_1_1-1.

determine if a state has waived its sovereign immunity 'is a stringent one.'" (citation omitted)); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675–76 ("Generally, we will find a waiver either if the State voluntarily invokes our jurisdiction, . . . or else if the State makes a 'clear declaration' that it intends to submit itself to our jurisdiction." (alteration added; citations omitted)). Nonetheless, in evaluating Defendant's contention it is an arm of the state of Kentucky, the Court notes Defendant's past litigation conduct.

Also notable – and troubling – is Defendant's failure to cite *Gaffney* in its Motion, even though the case is squarely on point. (*See generally* Mot.). Attorneys are ethically obligated to "disclose adverse case authority whether or not they are personally involved in the adverse cases." *Plant v. Doe*, 19 F. Supp. 2d 1316, 1319 (S.D. Fla. 1998). Defendant did not address *Gaffney* until Plaintiff brought the case to the Court's attention in her Response. (*See* Resp. 9; Reply 5). Instead, Defendant only cited *Skidmore v. Access Group., Inc.*, 149 F. Supp. 3d 807, 808 (E.D. Mich. 2015), as an example of a court determining Defendant was an arm of the state entitled to sovereign immunity.[3]

In *Skidmore*, a *pro se* plaintiff brought state and federal claims against Defendant, alleging Defendant failed to properly process student loan payments and falsely reported loans as unpaid to credit agencies. *See generally id.* The court weighed four factors established by the Sixth Circuit in *Ernst*, 427 F.3d 351, and concluded: (1) "Kentucky is potentially liable for any judgment against KHESLC," *Skidmore*, 149 F. Supp. 3d at 812; (2) "Kentucky courts would conclude that KHESLC is an arm of the State, despite its statutory classification as 'an independent de jure municipal corporation and political subdivision,'" *id.* at 814; (3) the state has substantial control over Defendant, *see id.* at 816; and (4) Defendant's purpose is to help

---

[3] The court in *Berg v. Access Group, Inc.*, No. CIV.A. 13-5980, 2014 WL 4812331, at *12 (E.D. Pa. Sept. 26, 2014), also found the KHESLC was entitled to sovereign immunity.

"finance higher education for Kentucky residents," *id.* at 817. On the present record, the undersigned disagrees with several of the *Skidmore* court's conclusions and agrees with the *Gaffney* court's analysis. For the reasons explained below, the Court finds Defendant is not entitled to sovereign immunity.

### B.     First Factor – How State Law Defines the Entity

The first factor in the Eleventh Circuit's arm-of-the-state-analysis — how state law defines the entity — weighs in favor of finding Defendant is not an arm of the state. Kentucky's General Assembly created Defendant as "an independent de jure municipal corporation and political subdivision of the Commonwealth of Kentucky." Ky. Rev. Stat. § 164A.030; *id.* § 164A.050(1)–(2). It is well settled law Eleventh Amendment immunity "does not extend to counties, municipal corporations, or other political subdivisions of the state." *Stewart v. Baldwin Cty. Bd. of Educ.*, 908 F.2d 1499, 1509 (11th Cir. 1990) (citation omitted). Kentucky clearly defined Defendant as a "municipal corporation" and "political subdivision," Ky. Rev. Stat. § 164A.030, thus signaling it did not intend it to be an arm of the state.

Defendant argues even though the enabling statute explicitly refers to it as a municipal corporation and political subdivision, this language "is not determinative of the inquiry into this first factor" because Kentucky courts would find it is an arm of the state under a two-factor test established by the Kentucky Supreme Court in *Comair, Inc. v. Lexington-Fayette Urban County Airport Corporation*, 295 S.W.3d 91, 99 (Ky. 2009). (*See* Mot. 10). The two factors are: (1) "whether the entity in question is an agency (or alter ego) of a clearly immune entity (like the state or a county) rather than one for purely local, proprietary functions"; and (2) "whether the entity exercises a governmental function" that is "integral to state government." *Comair*, 295 S.W.3d at 99 (internal quotation marks and citation omitted).

The Court declines the invitation to engage in *Comair*'s two-factor analysis. "[I]t is federal law, not state law, that ultimately governs whether an entity is immune under the Eleventh Amendment." *Lightfoot*, 771 F.3d at 771 (alteration added; citation omitted). Federal law applies because some states extend immunity to entities, such as counties, that are "clearly not immune under the Eleventh Amendment." *Id.* (citations omitted).

Nevertheless, although recognizing "[s]tate-law immunity does not control [the Court's] analysis," *id.* (alteration added), the Court notes Kentucky courts have found an entity that: (1) is a "political subdivision and public body corporate"; (2) has the power to "sue and be sued"; (3) exercises "all of the powers of private corporations"; and (4) can enter into contracts; is not entitled to sovereign immunity. *Transit Auth. of River City v. Bibelhauser*, 432 S.W.3d 171, 174 (Ky. Ct. App. 2013) (internal quotation marks and citations omitted). And even the *Comair* court acknowledged municipal corporations "are not entitled to sovereign immunity." 295 S.W.3d at 97. More recently, in *Coppage Construction Co., Inc. v. Sanitation District No. 1*, 459 S.W.3d 855, 859 (Ky. 2015), the Kentucky Supreme Court stated:

> [In *Comair*,] the Court . . . reaffirm[ed] our long-standing position of denying sovereign immunity to local government entities known as municipal corporations . . . . Municipal corporations are generally defined as "local entities created by [an] act of the General Assembly and not agencies performing the services of central state government."

*Id.* (first four alterations added) (quoting *Kentucky Ctr. for the Arts Corp. v. Berns*, 801 S.W.2d 327, 331 (Ky. 1990)).

Under both federal and Kentucky law, immunity "does not extend to . . . municipal corporations." *Stewart*, 908 F.2d at 1509 (alteration added); *see also Coppage Constr. Co., Inc.*, 459 S.W.3d at 859. Defendant's enabling statute defines it as a "municipal corporation," Ky. Rev. Stat. § 164A.030, and allows Defendant "[t]o sue and be sued in its own name and to plead and be impleaded," *id.* § 164A.060 (alteration added). Thus, the plain language of the enabling

9

statute indicates Defendant is a municipal corporation, a local entity that does not perform services of the central state government.

Defendant acknowledges no "Kentucky state court has . . . yet had the opportunity to directly declare whether Defendant is an arm of the state." (Mot. 11 (emphasis removed; alteration added). As noted, the most recent district court in the Sixth Circuit to grapple with the issue determined Defendant is not an arm of the state. *See Gaffney*, 2016 WL 3688934, at *9. That determination was grounded in a careful consideration of the nature of the activities Defendant performs. *See id.* The *Gaffney* court was not persuaded Defendant's activities were the sort contemplated as falling "within the traditional purview of the state," as a substantial portion of loan-servicing activities "involve functions that have been left historically to local governments or private industry." *Id.* (noting the *Skidmore* court's "reliance on the legitimacy of the State's interest" in facilitating the attainment of education "misinterprets the focus of" one of the factors the Sixth Circuit considers in determining whether an entity is an arm of the state — "whether the entity's functions fall within the traditional purview of state or local government"). This is a sound characterization regarding the functions performed by the KHESLC.

Because "how [Kentucky] law defines" Defendant evidences the legislature did not intend to make Defendant an arm of the state, *Manders*, 338 F.3d at 1309 (alteration added), and under federal and Kentucky law Defendant is not considered an arm of the state, the first factor weighs against finding Defendant is entitled to sovereign immunity.

## C.     Second Factor – Degree of Control the State Maintains Over the Entity

With regard to the second factor — the degree of control the state maintains over the entity — Defendant asserts "Kentucky exerts extensive control over" it. (Mot. 12). Plaintiff disagrees, explaining "Defendant still maintains the control and power to[:] [(1)] independently

make, purchase, and service loans; [(2)] procure insurance; [(3)] modify interest rates or other loan terms; [(4)] determine the salaries of its employee[s]; [(5)] enter into contracts; and [(6)] sue or be sued in its own name." (Resp. 9 (alterations added) (citing Ky. Rev. Stat. §§ 164A.060(1)–(3), (5)–(7), (9), (11), (15), (18))); *see also Gaffney*, 2016 WL 3688934, at *7.

Kentucky does maintain some control over Defendant. For example, the state governor may remove any director of Defendant's board of directors "in case of incompetency, neglect of duties, gross immorality, or malfeasance in office." Ky. Rev. Stat. § 164A.050(6). Thereafter, the governor may "appoint a person to fill" the vacancy. *See id.* Additionally, five Kentucky state officials serve as "ex oficio voting members" of Defendant's board of directors. *Id.* § 164A.050(3)(a). If Defendant chooses to issue bonds not secured by student loans, it must "obtain approval of the issuance from the General Assembly." *Id.* § 164A.080.

Some courts have considered a state governor's ability to appoint board members and remove them "for just cause" a "limited state oversight" that is "not dispositive" of whether the state exerts extensive control over the entity. *Ala. Space Sci. Exhibit Comm'n v. Odysseia Co., Ltd.*, No. 5:14-CV-00413-MHH, 2016 WL 4414681, at *3 (N.D. Ala. Aug. 19, 2016) ("*Alabama Space*") (citation omitted). And despite Kentucky's limited oversight, the enabling statute gives the KHESLC numerous powers. For example, Defendant has the power to: (1) borrow money "as may be deemed necessary by the corporation," Ky. Rev. Stat. § 164A.060(7); (2) create rules and regulations for "its lending programs," *id.* § 164A.060(8); (3) enter into contracts "with any federal or state agency or any . . . other organization," *id.* § 164A.060(9) (alteration added); (4) "adopt bylaws for the regulation of its affairs and the conduct of its business," *id.* § 164A.060(14); (5) hire "attorneys . . . and such other consultants and employees," *id.* § 164A.060(15) (alteration added); and (6) make investments and issue bonds, *see id.* §§

11

164A.060(16)–(17). These are just a few examples of Defendant's independence from the state and its power to manage its daily operations. *See id.* §§ 164A.060(1)–(19).

In *Alabama Space*, in considering a motion to remand, the court found the plaintiff state agency operated "like a private corporation" and was not an arm of the state because it "hire[d] its own personnel; raise[d] and spen[t] money with limited State oversight; contract[ed] in its own name; own[ed] property, including the property at the center of th[e] lawsuit; c[ould] sue and be sued in its own name; and [wa]s not limited to representation by the State Attorney General's Office . . . ." 2016 WL 4414681, at *5 (alterations added). Recently, in *Miller II*, the Eleventh Circuit decided an entity was not an arm of the state even though the state dictated the operational structure of the entity because the entity "retain[ed] substantial autonomy over day-to-day operations and ordinary personnel management, signaling meaningful local control." 2017 WL 370850, at *4 (alteration added). Similarly, here, because the KHESLC has general corporate powers and the ability to make operational and commercial decisions, it appears Kentucky does not exert extensive control over it.

Overall, Kentucky's role in Defendant's daily operational and financial matters is extremely limited, and Defendant has not presented any evidence to the contrary, except for citing provisions of the enabling statute that suggest otherwise. (*See generally* Mot. 12–15; Reply 6–7). Defendant bears the burden of demonstrating it qualifies as an arm of the state, yet it has not presented any evidence of its daily operations to show Kentucky does indeed exert extensive control over it, as it claims. (*See generally* Mot.; Resp.). Upon the present record, the Court finds Defendant enjoys autonomy in its operations and commercial activity, *see, e.g.*, Ky. Rev. Stat. §§ 164A.060(1)–(19), despite the state's limited control; as such, this factor is at best neutral.

### D. Third Factor – Where the Entity Derives its Funds

As to the third factor — where Defendant derives its funds — Defendant acknowledges it "is funded through the student loans that it services, finances, and collects." (Mot. 15). It nonetheless argues the Court should focus on the fourth factor because Kentucky is *potentially* liable for a judgment against Defendant. (*See id.*). Defendant also states "it is . . . authorized to accept and expend funds appropriated by the General Assembly." (*Id.* (alteration added) (citing Ky. Rev. Stat. § 164A.190)). Defendant devotes minimal discussion in its Motion and Reply to this portion of the arm-of-the-state-analysis and does not dispute it derives its funds through the student loans it services. (*See id.*; Reply 7). In one instance, Defendant does argue "the state may provide money to Defendant"; "[t]hus, the Defendant's funds are derived from the state." (Reply 7 (alteration added)). This faulty syllogism makes an unsound inferential leap — although the state is permitted to provide money to Defendant, this does not lead to the conclusion Defendant derives its funds from the state.

In any event, Defendant fails to present any evidence showing the amount of funds, if any, it receives from the state. *See Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309, 1315 n.16 (11th Cir. 2003) (in determining whether the defendant is an arm of the state, the court stated the defendant had presented "no evidence" as the "amount of funds, if any" the defendant had received from a state agency, and it was "clear" the defendant did not rely on the state agency's "funds to operate or satisfy [its] liabilitites or claims" (alteration added)). In *Miller II*, the Eleventh Circuit stated an entity claiming it derives its funds from the state bears the burden of presenting evidence of "the actual proportion of state to non-state funding on which it relies," the control of the state over the entity's source of funds, and "nature of its budget." 2017 WL 370850, at *5.

Upon a careful review of the written submissions, the Court finds Defendant does not rely on the state to fund its operations. Despite its attempts to diminish the importance of its main source of funds, Defendant is funded by its commercial activities. (*See* Mot. 15). Defendant's reliance on language from its enabling statute (*see* Mot. 15; Reply 7), is unavailing. *See Miller II*, 2017 WL 370850, at *5 (the entity claiming immunity "cites to a single provision of [its] enabling statute" and does not provide any evidence of its source of funds, weighing against immunity (alteration added)). Accordingly, this factor weighs against finding the KHESLC is an arm of the state. *Cf. Peery v. Serenity Behavioral Health Sys.*, No. CV106-172, 2009 WL 1228446, at *7 (S.D. Ga. May 4, 2009) (determining because the entity "is *heavily reliant* on state funding, this factor cuts towards Eleventh Amendment immunity" (emphasis added)).

### E. Fourth Factor – Who is Responsible for Judgments Against the Entity

The last factor considers who is responsible for a judgment against Defendant. *See Manders*, 338 F.3d at 1309. According to Defendant, "Kentucky *could potentially* be responsible for paying any judgment and/or complying with any order entered against" it. (Mot. 16 (emphasis added)). Defendant recognizes "Kentucky will not be financially responsible for Defendant's student loan and bond obligations," but argues the statute does not explicitly exempt the state from financial responsibility for any "other types of liabilities — including judgment entered against Defendant." (*Id.* 17 (emphasis removed) (citing Ky. Rev. Stat. § 164A.070(1)).

The enabling statute states any obligations, debts, or liabilities of Defendant "shall be payable solely from the revenues or assets of the corporation" and "shall not be deemed . . . [an] obligation of the state." Ky. Rev. Stat. § 164A.070(1) (alterations added). Despite this clear language recognizing the state is not responsible for any of Defendant's obligations or liabilities,

Defendant maintains the state is potentially liable. (*See* Mot. 17–18). This position fails to persuade.

While Kentucky may choose to assist Defendant in expenses it incurs "in carrying out the provisions" of the enabling statute, the statutory language is permissive, not mandatory. Ky. Rev. Stat. § 164A.070(1). As the *Berg* court noted:

> Even though Kentucky is able to use state funds to support KHESLC, such support is not mandated, and "a state's voluntary contributions to an entity do not create an Eleventh Amendment jurisdictional bar: 'Although the [state] might well *choose* to appropriate money to [an entity] to enable it to meet a shortfall caused by an adverse judgment, such voluntary payments by a state simply do not trigger Eleventh Amendment immunity." . . . . In addition, simply receiving funds from the state does not make an agency immune . . . . The facts here indicate that [this] factor weighs against finding immunity for KHESLC.

2014 WL 4812331, at *9 (internal citations omitted; emphasis and first alteration in original; last three alterations added). Kentucky may elect to provide Defendant with funds, but it is not required to do so. *See* Ky. Rev. Stat. § 164A.070(1).[4]

Moreover, Defendant fails to present any evidence of the state's potential liability for any judgment. (*See* Mot. 16–18; Reply 8). Defendant's argument is premised on the assumption a judgment entered against it may potentially pass to the state. (*See* Mot. 17). Defendant "misconstrues the relevant inquiry, which is whether the state is potentially legally liable for a judgment against the entity seeking immunity, not whether the state or another party is obligated

---

[4] Section 164A.070(1) states:

> Obligations issued under the provisions of this chapter shall not be deemed to constitute a debt, liability or obligation of the state or a pledge of the faith and credit of the state, but shall be payable solely from the revenues or assets of the corporation. Each obligation issued under this chapter shall contain on the face thereof a statement to the effect that the corporation shall not be obligated to pay the same nor the interest thereon except from the revenues or assets pledged therefor and that neither the faith and credit nor the taxing power of the state is pledged to the payment of the principal of or the interest on such obligation.

Ky. Rev. Stat. § 164A.070(1).

to reimburse or indemnify the entity for damages incurred." *Lowe v. Hamilton Cty. Dep't of Job & Family Servs.*, 610 F.3d 321, 325 (6th Cir. 2010). Defendant "misses the analytic focus of this factor, which is the state's potential legal liability for a judgment against the entity, not the state's willingness or obligation to reimburse the entity for damages paid as a result of the judgment." *Id.* at 326.

Defendant has not met its burden in showing Kentucky will necessarily pay any judgment. "In order to establish that the potential for state liability favors an extension of sovereign immunity, KHESLC must show — through citation to formal legal obligations, a factual account of fiscal practice, or some combination of the two — that its liabilities are potentially liabilities of the state. It simply has not done so." *Gaffney*, 2016 WL 3688934, at *5; *see also Miller II*, 2017 WL 370850, at *7 (stating the entity claiming immunity "failed to present evidence that the State . . . would be obligated or incentivized to prop up [the entity] in the event of its financial distress or insolvency" (alterations added)). Here, it appears any judgment for Plaintiff may legally be enforced against the KHESLC, not the state of Kentucky; thus, this factor weighs against finding the KHESLC is an arm of the state.

### F. Balance of Four Factors

A weighing of the Eleventh Circuit's four factors leads to the conclusion Defendant is not an arm of the state. Although the second factor is at best neutral, the other three factors weigh in favor of finding Defendant is not entitled to sovereign immunity. Defendant is "engaged in a commercial, interstate activity that goes far beyond the more traditional purpose of making education available to citizens of [Kentucky]." *Gaffney*, 2016 WL 3688934, at *9 (alteration added). It is a loan servicing corporation that derives its funds from collecting interest rates on

student loans, and Kentucky is not liable for KHESLC's obligations or debts. Accordingly, it is not an arm of the state and is not entitled to sovereign immunity under the Eleventh Amendment.

### G.  Additional Factors

In its Motion, Defendant also argues it is considered an arm of the state under one factor it attributes to the U.S. Supreme Court — "whether the entity's functions fall within the traditional purview of state or local government," (Mot. 5 (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 44–45, 51 (1994))[5] (second citation omitted)[6]; *see also* Mot. 18) — and Kentucky law (*see id.* 16–18). According to Defendant, it helps "make higher education affordable and available to Kentucky residents," serving a public statewide purpose that entitles it to sovereign immunity. (*Id.* 18). Plaintiff, of course, sees Defendant's role differently: as "effectively no different than a for-profit private debt collection company." (Resp. 15).

While "higher education is a function within the traditional purview of state government," *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 779 (6th Cir. 2015), Defendant "'is not in the business of education,'" *Gaffney*, 2016 WL 3688934, at *9 (quoting *Skidmore*, 149 F. Supp. 3d at 814). "It is in the business of making, buying, and collecting on student loans, allegedly including many that have no apparent connection to [Kentucky] other than the fact that KHESLC services them." *Id.* (alteration added).

In determining an entity's function, courts must consider the state's interest and whether an entity's function has traditionally been exercised by the state or has been historically left to local governments or private industry. *See id.* In *Gaffney*, the court rightly concluded the

---

[5] Defendant asserts the Supreme Court in *Hess* identified four factors courts consider in deciding whether an entity is an arm of the state or a political subdivision. (*See* Mot. 5 (citing *Hess*, 513 U.S. at 44–45, 51) (second citation omitted)). No explicit four-factor test is expressed; the *Hess* decision generally discusses factors courts should consider in determining whether an entity qualifies for sovereign immunity.

[6] Defendant does not provide a full proper citation for this second case. (*See* Mot. 5).

KHESLC performs a function traditionally within the purview of private corporations, not the state, and thus this factor weighs against extending sovereign immunity. *See id.* Defendant fails to present any evidence showing it serves a traditional state function; instead, it merely relies on language from the enabling statute to support its position. (*See* Mot. 18; Reply 8–9).

Defendant further argues it is entitled to sovereign immunity under Kentucky law. (*See* Mot. 19–20). It argues the two factors established in *Comair* — (1) "whether the entity in question is an agency (or alter ego) of a clearly immune entity (like the state or a county) rather than one for purely local, proprietary functions"; and (2) "whether the entity exercises a governmental function" that is "integral to state government," 295 S.W.3d at 99 (internal quotation marks and citation omitted) — weigh in favor of finding it is an arm of the state (*see* Mot. 19–20). *Comair*'s two-factor-analysis focuses on determining whether the entity's functions can be classified as state or local functions. *See* 295 S.W.3d at 99. This two-factor-test is similar to the factor Defendant asserts is considered by the U.S. Supreme Court (*see* Mot. 5 (citing *Hess*, 513 U.S. at 44–45, 51); *see also* Mot. 18) — "whether the entity's functions fall within the traditional purview of state or local government" (Mot. 18) — and again, Defendant has not met its burden in establishing it performs an essential state function.

Nevertheless, as explained, the Court does not consider whether the KHESLC would be immune under Kentucky law because "it is federal law, not state law, that ultimately governs whether an entity is immune under the Eleventh Amendment." *Lightfoot*, 771 F.3d at 771. Federal courts consider state law only to the extent of understanding how state provisions define the entity but do not adopt the states' sovereign immunity factors. *See, e.g.*, *id.* at 768. Federal law governs because some states extend immunity to entities that are "clearly not immune under the Eleventh Amendment," such as counties. *Id.* at 771.

For instance, in *Comair*, the Kentucky Supreme Court delineated Kentucky's two-factor sovereign immunity test and stated "[a] county government is cloaked with sovereign immunity." 295 S.W.3d at 94. While Kentucky provides immunity for counties, the Eleventh Amendment does not. *See id.*; *see also Lightfoot*, 771 F.3d at 771. Although Kentucky law may assist the Court in analyzing the federal sovereign immunity factors, state law is not determinative. *See Miller II*, 2017 WL 370850, at *2.

## IV.   CONCLUSION

The KHESLC's enabling statute does not explicitly make Defendant an arm of the state, and under the Eleventh Circuit's four-factor test, Defendant has not met its burden of showing it is entitled to sovereign immunity. For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that the Motion to Dismiss **[ECF No. 12]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 14th day of February, 2017.

**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

cc:   counsel of record